**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2582
_____

BRAY JIBRIL MURRAY,
Appellant

v.

COLLEN MCCOY; CHARLIE J. MCKEOWN; C.O. COOPER; SGT.  GILROY;
CAPTAIN LUKASHENSKI; KEVIN RANSOM; JASEN BOHINSKI; MICHAEL
GOYNE; SGT. ROBERT MCCOY
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1:21-cv-00320)
District Judge:  Honorable Robert D. Mariani
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 26, 2024
Before:  BIBAS, PORTER, and MONTGOMERY-REEVES, Circuit Judges

(Opinion filed March 28, 2024)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Bray Jibril Murray, a Pennsylvania prisoner, appeals from orders of the United States District Court for the Middle District of Pennsylvania that granted the defendants' motion for summary judgment and denied his motion for post-judgment relief. For the following reasons, we will affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

## I.

In 2021, Murray filed a pro se civil rights action under 42 U.S.C. § 1983, raising First Amendment retaliation and Fourteenth Amendment due process claims against Department of Corrections (DOC) defendants. (ECF 1.) In relevant part, he claimed that DOC employees falsely charged him with misconducts in retaliation for his submission of inmate grievances and that he was not permitted to call inmate witnesses at a disciplinary hearing. The defendants filed a motion for summary judgment (ECF 48), which Murray opposed. (ECF 58.) The District Court granted the defendants' motion, holding that Murray's claims lacked merit. (ECF 66 & 67.) Murray next filed a motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e). (ECF 69 & 70.) The District Court denied that motion (ECF 72), and Murray timely appealed. (ECF 73.)

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the District Court's summary judgment ruling is plenary. See DeHart v. Horn, 390 F.3d 262, 267 (3d Cir. 2004). Summary judgment is proper where, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine issue of material fact and the moving party is entitled to judgment as a

2

matter of law.  See Fed. R. Civ. P. 56(a); Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).

### III.

Murray raises three claims in his brief.[1]  First, he challenges the District Court's entry of summary judgment on his retaliation claim in favor of Correctional Officer (C.O.) Colleen McCoy and C.O. Cooper.  (Doc. 19, at 17-27 of 114.)  To sustain a retaliation claim, an inmate must demonstrate that: (1) he engaged in constitutionally protected conduct; (2) he suffered adverse action; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.  See Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001).  The District Court held that Murray's claim failed at the third step because the record showed that the alleged retaliatory acts either occurred before the protected activity or were too far removed temporally from the protected activity to establish causation.  We disagree.

"Because motivation is almost never subject to proof by direct evidence, [a prisoner] must rely on circumstantial evidence to prove a retaliatory motive," and can satisfy his burden "with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link."  Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016).  "[W]here the temporal proximity is not so

---

[1] Any claims not raised in Murray's brief have been forfeited.  See M.S. by & through Hall v. Susquehanna Twp. Sch. Dist., 969 F.3d 120, 124 n.2 (3d Cir. 2020).  In this connection, we note that Murray does not challenge the denial of his Rule 59(e) motion.

close as to be 'unduly suggestive,'" the appropriate test is "timing plus other evidence."

Id. at 424 (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000)).

And that other evidence can be "gleaned from the record as a whole." Id.

Between July 15, 2019, and October 3, 2019, Murray filed several grievances against C.O. McCoy and C.O. Cooper.[2] During this same time period, those defendants issued at least four misconducts against Murray.[3] In one instance, C.O. McCoy issued a misconduct within approximately 24 hours of Murray's submission of two grievances.[4] The District Court nevertheless concluded that Murray "failed to satisfy the third Rauser prong" because "[t]here is no reason that [C.O.] Colleen McCoy would issue a retaliatory misconduct against Murray based on his filing of grievances against other staff members." (ECF 66, at 22.) But, contrary to the District Court's conclusion, C.O. McCoy was named in those two grievances.

The District Court also found that there was no "unusually suggestive" temporal proximity between the other grievances and the issuance of the misconducts. We

---

[2] See Grievance 809441, filed on June 28, 2019 (ECF 59-2); Grievance 811782, filed on July 14, 2019 (ECF 59-3); Grievance 812432, filed on July 15, 2019 (ECF 59-4); Grievance 821833, filed on September 3, 2019 (ECF 59-7); Grievance 821799, filed on September 4, 2019 (ECF 59-9); Grievance 827627, filed on October 3, 2019 (ECF 59-13).

[3] See Misconduct B274397, issued on August 7, 2019 (ECF 59-5); Misconduct D123755, issued on August 8, 2019 (ECF 59-6); Misconduct D123772, issued on September 4, 2019 (ECF 59-10); Misconduct B972392, issued on September 30, 2019 (ECF 59-12).

[4] See Grievance 821833, filed on September 3, 2019 (ECF 59-7); Grievance 821799, filed on September 4, 2019 (ECF 59-9); Misconduct D123772, issued on September 4, 2019 (ECF 59-10).

4

conclude, however, that the District Court "took too narrow a view of the temporal proximity needed to satisfy the causal link element." Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997). In its analysis, the District Court measured the time between each grievance and the allegedly corresponding misconduct report. Excluding the grievances and misconduct discussed in the preceding paragraph, those periods ranged from 10 and 46 days. But by matching each grievance with a corresponding misconduct and simply counting the days between them, the District Court improperly ignored a "pattern of antagonism" that was indicative of a causal nexus.[5] Watson, 834 F.3d at 422; Farrell, 206 F.3d at 279 (stating that "this analysis viewed too narrowly the scope and nature of conduct and circumstances that could support the inference of causation").

That pattern included the evidence suggesting that C.O. McCoy, who had worked on the prison unit where Murray was housed between June 2017 and September 2019 (ECF 59-19, at 3 of 13; ECF 59-20, at 9 of 16), had not issued any misconducts to him until after he filed grievances against her beginning in 2019. (ECF 59-19, at 3-4 of 13; ECF 59-44, at 2-3 of 4.) Furthermore, although C.O. McCoy stated in answers to interrogatories that she did not know about two of Murray's grievances (ECF 59-19, at 4-

---

[5] Evidence of this pattern of antagonism exists only with respect to C.O. McCoy, not C.O. Cooper. The only evidence demonstrating that C.O. Cooper had retaliatory motive is temporal proximity which, in this instance, is insufficient to defeat summary judgment. See Krouse v. American Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997) (stating that temporal proximity, standing alone, is only sufficient when facts are "unusually suggestive" of a retaliatory motive).

5 of 13), decisions denying those grievances indicate that C.O. McCoy was made aware of the accusations at the time that they were made. (ECF 59-2, at 3 of 9; ECF 59-4, at 3 of 17.) In addition, there is a dispute of material fact concerning whether C.O. McCoy openly expressed her animosity for Murray because of his grievances (ECF 59-19, at 12 of 13; ECF 59-20, at 8 of 16; ECF 59-44, at 3 of 4), and whether C.O. McCoy was removed from Murray's unit in September 2019 because she had been harassing him. (ECF 59-19, at 8 of 13; ECF 59-44, at 3 of 4.) Moreover, Murray was exonerated of three misconducts, which, he suggests, demonstrates that they were retaliatory.[6] (Doc. 19, at 12-13 of 114; Doc. 26, at 9 of 19.) Finally, Murray asserts that when C.O. McCoy was reassigned to his unit on March 21, 2020, she issued a misconduct charging him with assault, threatening an employee with bodily harm, and refusing to obey an order.[7] (Doc. 19, at 24 of 114.) This evidence, examined as part of the record as a whole, indicates that there is a genuine material factual dispute about whether Murray raised a prima facie case

---

[6] Murray was exonerated of two misconducts charging him with covering his cell door. (Misconduct B274397 (ECF 59-5); Misconduct B972392 (ECF 59-12); ECF 49-2 at 6 of 6.) Although the record does not provide a clear reason for the exonerations, Murray points to a policy that permitted inmates to cover their doors in certain circumstances. (ECF 59-37, at 3 of 3.) In addition, with respect to the misconduct charging Murray with refusing to obey an order and taking food from the dining hall (Misconduct D123772 (ECF 59-10)), the record indicates that the charges were dismissed or that Murray was found not guilty. (ECF 49-2, at 2 of 6.)

[7] The District Court noted that C.O. McCoy issued the assault misconduct approximately six months after Murray filed Grievance 824076 in September 2019. (ECF 66, at 21.) Again, however, by focusing solely on the time between the grievance and the misconduct, the District Court improperly failed to consider evidence that C.O. McCoy, who Murray claimed maintained animus for him, issued the assault misconduct immediately upon being reassigned to his unit.

6

of retaliation against C.O. McCoy. Accordingly, we conclude that the District Court erred in entering summary judgment in favor of C.O. McCoy on Murray's retaliation claims.[8]

IV.

In his second claim, Murray argues that the District Court erred in rejecting his due process challenge to the disciplinary hearing at which he was found guilty of the assault charge. (Doc. 19, at 27-36 of 114.) Murray was sentenced to 90 days of disciplinary custody and lost his prison job. (ECF 1, at 10 of 18.) In his complaint, Murray alleged that he was not permitted to call inmate witnesses and that Hearing Examiner McKeown was not impartial because Murray had sued him in state court in 2017. (Id. at 14-15.) We agree with the District Court that Murray's challenge lacks merit because 90 days in disciplinary segregation, by itself, does not amount to an "atypical and significant" hardship that implicates due process concerns. See Sandin v. Conner, 515 U.S. 472, 484-86 (1995) (explaining that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence); see also Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002) (holding that seven months of disciplinary confinement did not violate a protected liberty interest). In addition,

---

[8] We note that the appellees argue that, even if Murray established a prima facie case of retaliation, summary judgment was proper because "Corrections Officials' actions were taken for legitimate penological interests and would have been taken despite Murray's protected activity." (Doc. 22, at 40 of 50.) Murray contests that argument. (Doc. 26, at 6-7 of 19.) Although the District Court acknowledged the "same decision defense" (ECF 66, at 18 of 30), it did not address it. Under these circumstances, we decline to address the defense in the first instance and offer no opinion on its applicability.

Murray lacks a due process liberty or property interest in his prison job.[9]  See James v. Quinlan, 866 F.2d 627, 629-30 (3d Cir. 1989).  Murray further suggests that he was entitled to enhanced due process protections because assault can be charged as a criminal offense.  (Doc. 19, at 27-30 of 114.)  But the assault charge against Murray was brought only in prison disciplinary proceedings, which "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In sum, we agree with the District Court that summary judgment was warranted on Murray's due process claim.

V.

Murray's final argument challenges the District Court's conclusion that Superintendent Kevin Ransom lacked personal involvement in the alleged constitutional violations.[10]  (Doc. 19, at 37-41.)  "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3rd Cir. 1988).  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Id.  Murray alleged that Superintendent Ransom "approv[ed] false charges of assault."  (ECF 1, at 6, 13 of 18.)  But, generally, "[r]uling

---

[9] To the extent that Murray suggested that the disciplinary hearing resulted in his later transfer different prison (ECF 1, at 5), we note that prisoners do not have a liberty interest in being confined to a particular institution.  See Meachum v. Fano, 427 U.S. 215, 225 (1976).

[10] Murray also argues that Captain Lukashenski was personally involved in the alleged constitutional deprivations.  (Doc. 19, at 38-41.)  We need not address this argument, however, because the District Court did not reject the claims against Captain Lukashenski for lack of personal involvement.

against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation." George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007); see also Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020). Murray also generally claimed that Superintendent Ransom was "[f]ully aware of [C.O.] McCoy's retaliatory animus for Plaintiff, and her desire to see him punished for prior grievances and PREA complaint against her." (ECF 1, at 10 of 18.) But Superintendent Ransom's awareness of Murray's allegations concerning C.O. McCoy, without more, is insufficient to establish personal involvement. See Reedy v. Evanson, 615 F.3d 197, 231 (3d Cir. 2010) (affirming grant of summary judgement for supervisor who was "kept abreast" of an investigation, but did not direct his subordinate "to take or not to take any particular action"); see also King v. Zamiara, 680 F.3d 686, 696-97 (6th Cir. 2012) ("Having the right to control the offending employee is not enough, simply being aware of the misconduct is not enough, and even administrative approval of an action later found to be retaliatory, without more, is not enough.").

## VI.

In sum, we will affirm in part, vacate in part, and remand for further proceedings consistent with this opinion. Specifically, we will vacate the District Court's order as it relates to Murray's retaliation claims against C.O. McCoy. In all other respects, we will affirm the District Court's judgment.